UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SAHER FAKHRY ISKANDAR BOULOS, | Case No. 22-cv-03569-LB |
| Plaintiff, | ORDER |
| v. | Re: ECF No. 51 |
| ARAB REPUBLIC OF EGYPT, et al., | |
| Defendants. | |

## INTRODUCTION

The plaintiff sued the Arab Republic of Egypt, its president, and its prime minister for allegedly expropriating land that his mother bought in 2001 and left to him as her sole heir when she died. The defendants moved to dismiss on the grounds that the complaint was not served properly, they are entitled to foreign sovereign immunity, the plaintiff does not state claims, the claims are time barred and barred by the doctrine of res judicata, and the complaint should be dismissed for forum non conveniens and improper venue. The court held a hearing on May 30, 2024. The plaintiff's counsel did not appear. The court issued an order to show cause and set the matter for a hearing on June 27, 2024, at 9:30 a.m. The court dismisses the complaint for the reasons advanced by the defendants.

## STATEMENT

In 2011, the defendants allegedly took real property containing a hotel resort that belonged to

the plaintiff's mother.[1] His mother bought the property in 2001 and developed and operated it until she moved to the U.S. in 2009.[2] In 2011, the Governorate of South Sinai obtained a judgment to take over the property without compensation to the mother, a U.S. citizen, while she was residing in the U.S.[3] After the mother died, the plaintiff — who became a U.S. citizen on March 20, 2018 — obtained a judgment from the probate court on May 18, 2020, declaring him the sole heir to his mother's estate.[4]

The property has been the subject of litigation since 2005. Between 2005 and 2007, the property was rented to the 2001 seller, and when he failed to pay rent, the mother obtained judgments against him.[5] On June 20, 2020, the Governorate of South Sinai sought to enforce a 2011 judgment returning the property to the Governorate.[6] Later that year, the National Bank of Egypt obtained a court order in its favor "declaring the 2011 Judgment [] null and void."[7] Despite that court order, the Governorate refused to return the property to the plaintiff.[8]

The defendants provided additional information about litigation in Egypt and the plaintiff's interest in the property. The plaintiff is a lawyer who maintains his law license in Egypt and can appear in all courts there.[9] The plaintiff's mother (forty-percent share), the plaintiff (thirty-percent share), and the 2001 seller (thirty-percent share) operated the property jointly (memorialized in a March 5, 2009, joint-venture agreement).[10] The mother was the joint venture's sole director and had a mandate to represent the joint venture before third parties, manage the company, "deal in its

---

[1] Compl. – ECF No. 1 at 2 (¶ 1), 20 (¶ 53), 21 (¶ 55). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 20 (¶ 53).

[3] *Id.* (¶ 54).

[4] *Id.* at 2 (¶ 1), 21 (¶ 55).

[5] *Id.* at 20 (¶ 54), 22 (¶ 57).

[6] *Id.* at 20 (¶ 54), 21 (¶ 56).

[7] *Id.* at 22 (¶ 57).

[8] *Id.* (¶ 58).

[9] España Decl. – ECF No. 51-1 at 2 (¶21) & Bar Ass'n Letter, Ex. A to *id.* – ECF No. 51-2. The court judicially notices the foreign judgments and court documents. *Kenneth v. Yeung Chi Sing Holding (Delaware), Inc.*, No. 18-CV-07644-YGR, 2020 WL 409010, at *4 n.5 (N.D. Cal. Jan. 24, 2020).

[10] España Decl. – ECF No. 51-1 at 2 (¶ 3) & Mem. of Ass'n, Ex. B to *id.* – ECF No. 51-3.

name," including "before governmental and non-governmental bodies," and enter into agreements, and she had "the right to issue powers of attorney and authorizations to others for the purpose of all or some of the above."[11] Her notarized signature is on the agreement's last page, which states that the contract was signed by her "on her own behalf and in her capacity on behalf of [the 2001 seller] . . . by virtue of general power[s] of attorney" from the 2001 seller and the plaintiff.[12]

In 2004, the Governorate filed a breach-of-contract claim against the 2001 seller, seeking recission of a December 1, 2011, land-sale agreement between the Governorate and the 2001 seller. On December 31, 2011, the court entered judgment in the Governorate's favor.[13] The Egyptian court of appeals affirmed on June 19, 2012.[14] The 2001 seller's lender, the National Bank of Egypt, subsequently sought an order from the Ismailia economic court that the bank — which gave the 2001 seller a construction loan secured by the property — was not bound by the 2011 judgment.[15]

The plaintiff's complaint has six claims: claim one for a violation of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605, and claims two through six for violations of 42 U.S.C. § 1983. The § 1983 claims are a Fifth Amendment taking without just compensation (claim two), substantive and procedural due-process violations for an illegal taking under the Fourteenth Amendment (claims three and four), an equal-protection violation under the Fourteenth Amendment for the illegal taking of a tourism site where the prophet Moses had his conversation with God (and the plaintiff alleges here that he is a Christian born in Egypt with a majority Muslim population) (count five), and a request for injunctive relief (claim six).[16]

The court held a hearing on May 30, 2024, at 9:30 a.m. The plaintiff did not appear but later

---

[11] Mem. of Ass'n, Ex. B to *id.* – ECF No. 51-3 at 5–6 (pp. 3–4) (art. 12).

[12] *Id.* at 12.

[13] España Decl. – ECF No. 51-1 at 2 (¶ 4) & S. Sinai Ct. of First Instance J., Ex. C to *id.* – ECF No. 51-4 at 3–7.

[14] Ismailia Ct. App. J., Ex. C to *id.* – ECF No. 51-4 at 7–10.

[15] Compl. – ECF No. 1 at 22 (¶ 57). The defendants' motion has more facts about the subsequent ruling but does not cite the record. Mot. – ECF No. 51 at 13 & n.3.

[16] Compl. – ECF No. 1 at 23–32 (¶¶ 60–108).

said that he miscalendared the date.[17] All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[18]

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020) ("[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ."); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

---

[17] Response – ECF No. 64.

[18] Consents – ECF Nos. 44–45.

*Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

The plaintiff did not meaningfully respond to the grounds for dismissal that the defendants asserted in their motion to dismiss. Also, the plaintiff's counsel did not appear at the May 30 hearing, despite his awareness of it (and now explains that he miscalendared the hearing). The defendants noticed their motion for a hearing on May 30 at 9:30 a.m., in courtroom B, 15th Floor, 450 Golden Gate Avenue, in San Francisco.[19] The opposition's caption reflects that hearing date, time, and place.[20] When the plaintiff's counsel did not appear at the hearing, the defendants contended that it was part of an abusive pattern to force litigation of the case and the defendants to incur unnecessary expense.[21] The pattern at least as of the hearing date suggested a possible failure to prosecute the case.

In the next two sections, the court (1) dismisses the complaint for the reasons that the defendants advance and (2) sets forth the standards for sanctions, including monetary and (ultimately) terminating sanctions, if the plaintiff does not prosecute his case.

---

[19] Dkt. Text for Mot. – ECF No. 51 at 1.

[20] Opp'n – ECF No. 57 at 1.

[21] Reply – ECF No. 60 at 6; España Decl. – ECF No. 60-1 at 2 (¶¶ 2–5) (detailing plaintiff's counsel refusal to withdraw or amend his complaint despite the defendants' identifying deficiencies in it and suggesting dismissal or amendment to cure the deficiencies); 5/30/24 Tr. – ECF No. 63 at 4:19–25.

ORDER – No. 22-cv-03569-LB                                          5

**1. Motion to Dismiss**

Six grounds exist to dismiss the case: (1) the plaintiff's failure to comply with the FSIA's service requirements; (2) the defendants' entitlement to foreign sovereign immunity; (3) § 1983 does not apply to foreign governments or foreign government officials; (4) the claims accrued in 2011 and are time barred; (5) prior litigation in Egypt has preclusive effect; and (6) venue is improper and the case should be dismissed for forum non conveniens.[22]

First, the plaintiff did not properly serve the defendants under the FSIA. Preliminarily, the plaintiff contends that the defendants waived this objection by asking for an extension of time to respond to the complaint.[23] They did not waive the objections (for the reasons that they advance in their reply).[24] Turning to service, the plaintiff attaches to his opposition a USM-94 form, but he does not authenticate it by a declaration. N.D. Civ. L. R. 7-5. Putting aside the authentication issue, he did not attach the complaint, summons, and the translations required under 28 U.S.C. § 1608(a)(2). Moreover, assuming that all was served correctly, the USM-94 in the record was addressed only to the Arab Republic of Egypt, not to the other defendants.[25] In sum, the record does not allow the court to conclude that service was proper.

Second, the defendants are entitled to foreign sovereign immunity. It is the plaintiff's burden to "demonstrate [that] a FSIA exception applies." *Rukoro v. Fed. Republic of Germany*, 976 F.3d 218, 224 (2nd Cir. 2020). The Arab Republic of Egypt is a foreign sovereign nation. The complaint establishes that the president and prime minister are being sued in their official capacities.[26] The plaintiff advances two FSIA exceptions to sovereign immunity: the commercial-activity exception and the expropriations (or international-takings) exception.[27]

---

[22] Mot. – ECF No. 51 at 8; Reply – ECF No. 60 at 5–6.

[23] Opp'n – ECF No. 57 at 20–21.

[24] Reply – ECF No. 60 at 6–7 (collecting cases that hold that objections to service are waived only when they are not asserted promptly); *see* Order – ECF No. 41 (collecting cases and holding that consent to magistrate-judge jurisdiction does not waive any defenses, including a defense of lack of service).

[25] Ex. 3 to Opp'n – ECF No. 57-1 at 32–42.

[26] Compl. – ECF No. 1 at 2–3 (¶¶ 4–7).

[27] *Id.* at 12–14 (¶¶ 32–39); Opp'n – ECF No. 57 at 24–28.

For the commercial-activity exception, a district court may exercise jurisdiction over foreign sovereigns where the plaintiff's claims are based on "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "An effect is 'direct' if it follows as an immediate consequence of the defendant's activity." *United States v. LSL Biotechns.*, 379 F.3d 672, 680 (9th Cir. 2004) (citing *Republic of Argentina v. Weltover*, Inc., 504 U.S. 607, 618 (1992)). The "direct effect" must be "more than 'purely trivial' or 'remote and attenuated'" to satisfy the exception. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1134 (9th Cir. 2012) (quoting *Weltover*, 504 U.S. at 618). The only connection between the Egypt property and the U.S. is the plaintiff's and his mother's U.S. citizenship. A "foreign state's commercial activity outside the United States that caused physical or financial injury to a United States citizen is not enough to constitute a direct effect on the United States." *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 78 (2nd Cir. 2010); *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 726 (9th Cir. 1997) (financial loss alone is not a direct effect). The connection to the U.S. here is not a direct effect.

For the unlawful-expropriation exception, a district court may exercise jurisdiction where "rights in property taken in violation of international law are at issue and . . . that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). "To establish a geographic nexus" for this exception, the plaintiff must "show that its expropriated property 'or any property exchanged for such property' is either present in the United States in connection with a commercial activity carried on in the United States by the foreign state or owned or operated by an agency or instrumentality of the foreign state and that agency is engaged in commercial activity in the United States." *Aldini AG v. Silvaco, Inc.*, No. 21-CV-06423-JST, 2023 WL 3749792, at *17 (N.D. Cal. Mar. 27, 2023) (quoting 28 U.S.C. § 1605(a)(3)). The term "foreign state" can include agencies or instrumentalities of the state, but "the term 'agency or instrumentality' does not include the foreign state itself." *Takey Crist v. Republic of Turkey*, 107 F.3d 922, *3 (D.C. Cir. 1997). Here, there are no allegations about agencies or instrumentalities, and so the expropriation exception requires that the plaintiff allege that expropriated property was

exchanged for property in the U.S. in connection with a commercial activity carried out in the U.S. by Egypt. There are no allegations about this in the complaint.

Also, even if the plaintiff alleged a geographic nexus to the U.S., the plaintiff has not shown a violation of international law in connection with the alleged taking of the property. An expropriation violates international law where it "(a) is not for public purpose, or (b) is discriminatory, or (c) is not accompanied by provision for just compensation."[28] The domestic-takings rule bars jurisdiction over any claim involving a foreign sovereign's taking of property from its own citizen. *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021). That rule bars the claim here. For dual citizens, the issue turns on the plaintiff's "dominant and effective nationality." *Comparelli v. Boliviarian Republic of Venezuela*, 655 F.Supp.3d 1169, 1181 (S.D. Fla. 2023) (quoting *Comparelli v. Republica Bolivariana de Venezuela*, 891 F.3d 1311, 1323 (11th Cir. 2018)). The relevant expropriation occurred in 2011. The plaintiff did not become a U.S. citizen until 2018.

Also, even without the domestic-takings rule, the complaint is conclusory about how the takings violates international law. It alleges hearings and process (suggesting no violation) and has no allegations compelling a contrary conclusion.

In the opposition, the plaintiff contends that he is a Christian residing in a predominately Muslim country and suggests an impermissible motive.[29] As set forth in the Statement, there is a passing reference in the equal-protection claim about the plaintiff's status as a Christian, but no allegations support a conclusion that the Egyptian government took the property because of the plaintiff's religion. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017) (a plaintiff must "show (and not just arguably show) a taking of property in violation of international law").

Third, § 1983 does not apply to foreign sovereigns or foreign government officials. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987) ("acts by the Mexican government, including the Mexican Consulate, cannot constitute conduct under color of state law); *Ohno v.*

---

[28] Mot. – ECF No. 51 at 22 (recognizing this as the standard and citing Compl. – ECF No. 1 at 13–14 (¶ 38) and *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 712 (9th Cir. 1992)).

[29] Opp'n – ECF No. 57 at 25.

*Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013) (foreign governments are not "organs of the federal or California government" and thus are not bound by the U.S. constitution.).

Fourth, the claims accrued in 2011 and are barred. The plaintiff's claims are based on statute. The California forum's statute of limitations applies.[30] The longest applicable statute of limitations is the five-year statute for claims for the recovery of real property. Cal Civ. Proc. Code § 318; *see Dayton v. Czechoslovak Socialist Republic*, 672 F. Supp. 7, 13 (D.D.C. 1986) (applying the District of Columbia's three-year statute of limitations for recovery of damages for injury to real property to an international-takings claim). An action accrues for an inverse condemnation claim when the government entity "has physically entered and exercised dominion and control over some portion of a plaintiff's property." *Cobb v. City of Stockton*, 192 Cal. App. 4th 65, 70 (2011). The taking here was in 2011. The claims (filed in this 2022 lawsuit) are barred by the statute of limitations.

Fifth, prior litigation in Egypt seemingly bars the claim. The plaintiff, his mother, and the 2001 seller were all parties to the joint venture. The mother was the principal and could act on behalf of the venture.

Sixth, the defendants contend that venue is improper and the case should be dismissed for forum non conveniens.[31] The plaintiff did not respond to this argument and thus conceded it. *Lopez v. Cnty. of Los Angeles*, No. 15-CV-03804-TEH, 2016 WL 54123, at *2 (N.D. Cal. Jan. 5 2016). Venue in any event is appropriate only in the U.S. District Court for the District of Columbia: the provisions of 28 U.S.C. § 1391(f)(1)–(3) do not apply to the case, which leaves only the District of the District of Columbia, *id*. § 1391(f)(4).

**2. Sanctions**

The court discharges the order to show cause given the counsel's asserted calendaring error. But because the defendants contend that there has been a pattern, the court sets forth the standards for sanctions, including terminating sanctions, if a party fails to prosecute a case.

---

[30] Mot. – ECF No. 51 at 26 (analyzing cases).

[31] *Id.* at 29–32.

**2.1 Terminating Sanctions**

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." A dismissal order "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

"Rule 41(b) specifically provides that the failure of the plaintiff to prosecute his claim is grounds for involuntary dismissal of the action. The courts have read this rule to require prosecution with 'reasonable diligence' if a plaintiff is to avoid dismissal." *Anderson v. Air W., Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). "This court has consistently held that the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Id.* "The law presumes injury from unreasonable delay." *Id.* "However, this presumption of prejudice is a rebuttable one and if there is a showing that no actual prejudice occurred, that factor should be considered when determining whether the trial court exercised sound discretion." *Id*.

In *Yourish v. California Amplifier*, the Ninth Circuit applied the same five-factor standard considered in Federal Rule of Civil Procedure 37(b) cases in a Rule 41(b) case. 191 F.3d 983, 989–92 (9th Cir. 1999). "Under our precedents, in order for a court to dismiss a case as a sanction, the district court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Id.* at 990 (cleaned up). "We may affirm a dismissal where at least four factors support dismissal . . . or where at least three factors strongly support dismissal." *Id*. (cleaned up). "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors and we may review the record independently to determine if the district court has abused its discretion." *Id*. (cleaned up). "The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant

party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).[32]

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." *Id.*

A party suffers sufficient prejudice to warrant case-dispositive sanctions where the disobedient party's actions "impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (cleaned up).

Before ordering a terminating sanction, a court must warn the plaintiff and try other sanctions first. For example, a district court's failure to warn a party that dismissal is being considered as a sanction weighs heavily against the sanction. *U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 605 (9th Cir. 1988). Although "[a]n explicit warning is not always required, at least in a case involving 'egregious circumstances,'" "[i]n other circumstances, the failure to warn may place the district court's order in serious jeopardy." *Id*. Indeed, "[f]ailure to warn has frequently been a contributing factor in [Ninth Circuit] decisions to reverse orders of dismissal." *Id*. (cleaned up).

**2.2 Monetary Sanctions Under Federal Rules of Civil Procedure 37(d)(3) and (b)(2)(C)**

Rules 37(d)(3) and (b)(2)(C) provide that courts must require the party failing to act, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. "Under Rule 37(b)(2), which has the same language as Rule 37(d), the

---

[32] "This 'test,'" the Ninth Circuit has explained, "is not mechanical." "It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow:

> Like most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just. The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof.

*Conn. Gen.*, 482 F.3d at 1096.

burden of showing substantial justification and special circumstances is on the party being sanctioned." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

Federal courts use the lodestar method to determine a reasonable attorney's fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The burden of proving that claimed rates and number of hours worked are reasonable is on the party seeking the fee award. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). The court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

**2.3  Order to Appear on June 27, 2024**

The court converts the June 27 hearing to a case-management conference at 11:00 a.m. via Zoom at https://www.cand.uscourts.gov/judges/beeler-laurel-lb/. The purpose is to discuss next steps. The plaintiff's failure to appear risks the court's imposition of sanctions, including a monetary sanction awardable to the defendants for any costs and (likely here) dismissal of the case for failure to prosecute it, which will result in a judgment being entered in favor of the defendants.

## CONCLUSION

The court dismisses the complaint and sets a case-management conference for June 27, 2024, at 11:00 a.m. by Zoom.

**IT IS SO ORDERED.**

Dated: June 21, 2024

_____
LAUREL BEELER
United States Magistrate Judge